## THE STATE v. J. J. FINLEY, Appellant.

**Division Two, November 13, 1912.**

1. **EVIDENCE: Plat.** The introduction in evidence of a plat or diagram of the place where the homicide was committed, which one witness for the State testified was not exactly correct, and upon which a witness made a mark in the presence of the jury to indicate where deceased was standing when stabbed, but in all essential particulars a duplicate of another plat introduced by defendant, and both so meagre in their outlines as to neither elucidate nor to mislead or influence the jury, was not error.

2. ————: **Dying Declaration: Exclusion: No Proffer of Substance.** Although the witness did not testify that deceased testified he was about to die, yet if deceased had previously told other persons that he "was mighty bad, and bound to die," what deceased said to the witness, if otherwise competent, is admissible in evidence as a dying declaration; but in order for the appellate court to hold its exclusion to be error, it was necessary for defendant to have made known to the trial court what the witness would testify deceased had said; and the proper

245 Mo.—30

method of determining its competency is for the court to exclude the jury, and after hearing the evidence and the foundation for its introduction, determine whether or not it should be admitted.

3. ————: ————: **Deceased's Opinion.** A statement by deceased, *in extremis*, that he was to blame for bringing on the difficulty, without reciting the acts he did, was a mere opinion, and not admissible.

4. ————: ————: **Cumulative.** The exclusion of testimony of witnesses for defendant of dying declarations made by deceased which are mere repetitions of declarations narrated by the State's witnesses, is not error.

5. ————: **Leading Questions: Nonprejudicial Answers.** Although the trial court abused its discretion in permitting many questions to be asked which suggested the answers desired, yet if the witnesses did not follow the suggested lead, but gave answers indicating they were circumspect, relied upon their memories and were not unduly friendly to the prosecution, there was no reversible error.

6. **INSTRUCTIONS: Murder in Second Degree: Violent Passion Not Defined.** An instruction on murder in the second degree, in which the words "violent passion" are used without being defined, is not error, if defendant was convicted of a lower grade of homicide, though there was evidence upon which a conviction of murder in the second degree could be sustained.

7. ————: **Manslaughter: Provocation.** Violent passion suddenly aroused by insulting and abusive language, used by deceased towards defendant, will not reduce the killing with a knife to manslaughter. Mere words never justify a felonious assault with a deadly weapon.

8. ————: **Credibility of Witnesses: Relation to Other Parties.** An instruction telling the jury to consider the "character of each witness, his or her manner on the stand, his or her interest, if any, in the result of the trial, and his or her relation or feeling for defendant *or any other party or witness connected with the case*," is somewhat broader than proper, but if there is nothing in the record to indicate why it was not just as favorable to defendant as to the State, it will not be *held* to be reversible error.

9. **REMARKS OF COUNSEL: No Exception.** If no exceptions were saved to the court's failure to rule on objections to counsel's remarks or to rebuke counsel for making them, the failure of the court to do so is not for review.

10. **TRIAL: Examination by Special Counsel.** It is not error to permit special counsel for the State to conduct the examination of the State's witnesses.

Appeal from Pemiscot Circuit Court.—*Hon. W. S. C. Walker,* Judge.

AFFIRMED.

*Ward & Collins* for appellant.

(1) Grievous errors were committed in the admission of incompetent, irrelevant and immaterial testimony over the objections and exceptions of the defendant in the trial, and in the leading and improper manner in which it was elicited from the State's witnesses. The appellant's conviction was brought about by incompetent testimony in answer to questions most flagrantly leading. State v. Whalen, 148 Mo. 286; State v. Keath, 53 Mo. App. 383; State v. Napper, 141 Mo. 401. (2) The plat or diagram, although not shown by any witness to be correct, but, on the contrary, was shown to have been incorrect, was admitted in evidence over the appellant's objections and exceptions and stood before the jury, although a silent, yet a volume-speaking witness of untruths and inaccuracies against the appellant. State v. Bidstrupp, 237 Mo. 283; Underhill on Crim. Ev. (2 Ed.), Sec. 52; 17 Cyc. 412; 4 Ency. Ev. 641. (3) Appellant should have been permitted to show that deceased while under the sense of impending death stated the facts relating to the killing and the circumstances attending it. State v. Craig, 190 Mo. 332; State v. Kelleher, 201 Mo. 614; State v. Nocton, 121 Mo. 550; 1 Greenleaf on Ev. (14 Ed.), Sec. 158; 3 Russell on Crimes (9 Am. Ed.), 250; 6 Am. & Eng. Ency. Law, 108; House v. State, 21 L. R. A. (N. S.) 840; State v. Doris, 10 L. R. A. (N. S.) 660; Worthington v. State, 92 Md. 222; Worthington v. State, 56 L. R. A.

(N. S.) 353; State v. Draper, 65 Mo. 335. (4) It was the duty of the trial court when objection was made to the remark of the assisting counsel for the State to rule on such objection, and its failure to do so is reversible error in this case. Morrison v. Turnbaugh, 192 Mo. 427; State v. Spivey, 191 Mo. 87; State v. Woodward, 191 Mo. 619. (5) Had appellant's violent passion been produced by any lawful provocation he would have been guilty of no greater offense than manslaughter. The instruction is further erroneous because the court used the words "violent passion" and did not in this or in any other instruction define the meaning of these words. The failure in instructions to explain the meaning of such expressions as "violent passion," "in heat of passion," "upon sudden provocation," and like expressions is erroneous. State v. Reed, 154 Mo. 122; State v. Strong, 153 Mo. 548; State v. McKensie, 102 Mo. 620; State v. Andrews, 76 Mo. 101; State v. Skaggs, 159 Mo. 581. This instruction is erroneous for the further reason that every eyewitness to this homicide stated that deceased was either in a striking attitude or did strike appellant before appellant used his knife. Hence there was no evidence upon which to predicate an instruction that appellant used his knife in a "violent passion suddenly aroused by insulting and abusive language." In this instruction the trial court singled out only a part of the conduct of the deceased which may have tended to produce "violent passion" on the part of the appellant. State v. Hibler, 149 Mo. 478; State v. Rutherford, 152 Mo. 124. (6) The evidence in support of the prosecution was not offered by the prosecuting attorney, but by assistant counsel for the State. The accused has the right to look to the prosecuting attorney, who acts under his official oath, to safeguard his rights and to have no advantage taken of him. Sec. 5231, R. S. 1909.

*Elliott W. Major,* Attorney-General, and *Charles G. Revelle,* Assistant Attorney-General, for the State.

(1)  Objections are made that the State was permitted to ask certain leading and suggestive questions, but it is now a well-settled rule in this State that whether this should or should not be done rests in the sound discretion of the trial court, and a judgment will not be reversed upon that ground unless it affirmatively appears that the discretion has been unwisely and arbitrarily exercised.  It nowhere appears in this record that the court abused its discretion in this respect.  State v. Whalen, 148 Mo. 290; State v. Woodward, 191 Mo. 617; State v. Bateman, 198 Mo. 212.  (2)  To render dying declarations admissible it must appear that the party, when making them, believed that his dissolution was near at hand, and that he had abandoned all hope of recovery.  The declaration must not only be made by the declarant under a sense of the actual nearness of death, but there must be an absolute conviction of it in his mind. It is not enough that he should have thought he would ultimately never recover, but the declaration must have been made under an impression of almost immediate dissolution.  State v. Johnson, 118 Mo. 501; State v. Simon, 50 Mo. 373; State v. Partlow, 90 Mo. 629; State v. Horn, 204 Mo. 547; State v. Parker, 172 Mo. 202.  Appellant at no time indicated or placed in the record anything tending to show the statement or character of the statement which he sought to elicit, and this court is therefore unable to determine whether such statement was competent or material. The rejection of testimony is not open for review if the defendant, at the time of the exclusion of such evidence, made no offer of proof and no statement of what he expected to prove, but simply saved his exceptions.  State v. Foister, 202 Mo. 48; State v. Arnold, 206 Mo. 597; State v. Page, 212 Mo. 238; State

v. Martin, 124 Mo. 514; State v. Hodges, 144 Mo. 50. This court cannot declare from the record, that the statements which appellant sought to elicit would have been favorable to or in aid of his defense, or that such statements related to the act or circumstances of the killing. Dying declarations, to be admissible, must be restricted to the identification of the accused, the act of killing, the circumstances immediately attending it, and all those matters which form a part of the *res gestae,* but as to all matters occurring anterior or subsequent to the killing, and not immediately connected with it, same are inadmissible. State v. Draper, 65 Mo. 335; State v. Vansant, 80 Mo. 67; State v. Chambers, 87 Mo. 406; State v. Parker, 96 Mo. 382; State v. Welsor, 117 Mo. 570; State v. Horn, 204 Mo. 547; State v. Kelleher, 201 Mo. 632; Sec. 5115, R. S. 1909; State v. Lett, 85 Mo. 52. The statements, "That Jade [appellant] was not to blame," and "he said he brought it on himself," were wholly inadmissible as dying declarations because they gave merely the conclusions of a party not to the record, unaccompanied by the facts. State v. Elkins, 101 Mo. 344; State v. Evans, 124 Mo. 397; State v. Horn, 204 Mo. 548; State v. Kelleher, 201 Mo. 614; State v. Welsor, 117 Mo. 570; State v. Chambers, 87 Mo. 406; State v. Parker, 96 Mo. 382. (3) Appellant saved no exception to remarks nor to the failure of the court to reprimand the State's counsel. State v. Chenault, 212 Mo. 137; Champaign v. Hamey, 189 Mo. 709; State v. Valley, 196 Mo. 29; State v. McCarver, 194 Mo. 717. (4) Appellant was not convicted of second degree murder, but of fourth degree manslaughter, and, under such conditions, he cannot complain of any error in an instruction on second degree murder. State v. Haynes, 160 Mo. 567; State v. Evans, 158 Mo. 605; State v. Eaton, 75 Mo. 591; State v. Sansone, 116 Mo. 1; State v. Alfrey, 124 Mo. 393; State v. Darling, 199 Mo. 202; State v. Waters, 144 Mo. 341. (5) If

it were necessary to define the term "violent passion" at all, we submit that same was sufficiently defined by the instruction in which the term is used. It substantially told the jury that a "violent passion" was one "suddenly aroused by insulting or abusive language." State v. Kinder, 184 Mo. 297; State v. Rose, 142 Mo. 429. A failure to in any manner define such terms, if error at all, is error in favor of the defendant. State v. Sharp, 233 Mo. 289.

BROWN, P. J.—Tried in the circuit court of Pemiscot county on a charge of murdering his father-in-law, M. B. Holt, on August 4, 1909, defendant was convicted of the crime of manslaughter in the fourth degree, and appeals.

Both parties resided in the village of Cottonwood Point in Pemiscot county, and were owners of ferries on the Mississippi river. A fierce rivalry in the ferry business seems to have indirectly brought about the difficulty which resulted in the tragedy. Defendant established his ferry near one long owned and operated by his father-in-law, the deceased. This displeased deceased very much, and he made many threats against defendant, to the effect that he was going to stop defendant from running a ferry. if he had to use rough means to do so. Some of these threats were communicated to the defendant before the killing took place.

It appears that the fare for a round trip across the river at Cottonwood Point was $3.50. On the morning of August 4, 1909, defendant offered to ferry a man and wagon for seventy-five cents; whereupon deceased offered to ferry him for less. The bidding continued until deceased cut the price to forty cents. Deceased then walked up on the porch of a near-by drug store and sat down. Defendant started up the street with the apparent

intention of passing the drug store. Deceased, who was in an angry mood, said to defendant, in the presence of several persons, "You lived in my house a year and paid no rent." To this, defendant replied, "Come up to James's store" [a few steps distant], "and I will show you that you received credit for every penny of the rent." Deceased replied, "My wife stole grub for my table last year to feed your family during six months you were loafing." This seemed to anger defendant very much. He called deceased a liar, and walked up on the porch of the drug store and stabbed him with a pocket knife. Deceased made such resistance as he could with his fists and, after he was stabbed, struck defendant with a piece of wood which he picked up after the fight began.

As to who was the aggressor, the evidence is conflicting. Some witnesses testified that the deceased made no hostile demonstration except to stand with his fists clenched, until defendant began stabbing him; while others testified that deceased struck defendant with his fist and ran his hand in his pocket as if to draw a knife, before he was assaulted.

Dr. Sharp, a witness for the State, who attended deceased immediately after the stabbing, stated that deceased informed him that at the time he was stabbed he had left his knife with his wife; that this was the first time he had been without a knife in many years; that if he had had his knife at the time of the difficulty, the doctor would have had two men to sew up instead of one.

There is no dispute over the fact that immediately after the quarrel began defendant walked up on the porch of the drug store where deceased was sitting; but defendant claims that he was starting in the drug store to make a purchase, and did not go on the porch to attack deceased.

The evidence is uniform to the effect that deceased was a quarrelsome, overbearing, dangerous man, while defendant was inclined to be peaceable.

To shorten this opinion, we will give such other facts as are necessary to a full understanding of the case in connection with the conclusion we have reached in reviewing the alleged errors of the trial court.

I. Defendant complains of the introduction of a plat or diagram of the place where the crime was committed.

One witness for the State testified that this plat was not exactly correct. It was a very meagre plat, and we doubt if it impressed the jury in any manner. In all essential particulars it is a duplicate of another diagram introduced by the defendant. One of the witnesses made a small cross on the plat in the presence of the jury, to indicate where deceased was standing when stabbed. There are three such marks on the plat, without anything to inform us which of them was made by the witness. Neither the plat introduced by the State nor the one introduced by defendant are any help to us in understanding the evidence. They are too meagre to either elucidate or mislead; and we cannot say that the defendant was harmed by the one introduced by the State.

II. Error is assigned in the trial court's ruling excluding the evidence of Judge Brasher, by which defendant undertook to prove an oral dying declaration of deceased. Said witness did not testify that deceased knew he was about to die; but it appears from the evidence of other witnesses that prior to Judge Brasher's visit, deceased had told other persons that he was "mighty bad, and bound to die."

This was sufficient foundation for admitting the evidence of Judge Brasher. However, the record does not show what he would have testified to; therefore,

we cannot determine whether his evidence would have been favorable to defendant or whether it was admissible at all.

The proper method for the introduction of evidence of oral dying declarations, is for the court to exclude the jury and after hearing the evidence and the foundation for its introduction, determine whether or not it should be admitted.

The defendant did not ask for the exclusion of the jury when offering evidence of oral dying declarations alleged to have been made to Judge Brasher; it is therefore impossible for us to ascertain whether the defendant was prejudiced by the exclusion of such dying declarations. [State v. Page, 212 Mo. 224, 1. c. 238.]

Complaint is further made that the court struck out a dying declaration heard by the wife of defendant to the effect that deceased said he was to blame in bringing on the difficulty. It is not contended that deceased recited the acts which he did toward bringing on the difficulty. Therefore, such statement, if made by deceased, was a mere opinion, and not admissible. [State v. Horn, 204 Mo. 528.]

If we are to judge the excluded evidence of dying declarations by those declarations which were introduced, we would not hesitate to pronounce their exclusion a harmless error for another reason. They were mere repetitions of the testimony introduced by the State which fully established the fact that deceased brought on the fight by his insulting remarks to defendant while the latter was in the peace.

The statements regarding what deceased would have done if he had possessed a knife, were made to Dr. Sharp, the State's witness, and testified to by him without objection.

There being no conflict in the evidence on that point, the jury must have believed that deceased brought on the quarrel which resulted in his death;

but as to whether he struck or attempted to strike the first blow or intended to fight at all, when he began the quarrel, are matters very much in dispute.

III.   The defendant's complaint that the court permitted the prosecutor and special counsel for the State to propound leading questions to the witnesses, is well founded.  The court abused its discretion by permitting many questions to be asked in such form as to clearly suggest the answers desired.  This would justify us in reversing the judgment, were it not for the fact that those leading questions did not produce the mischievous results which their authors intended. A careful examination of the testimony given by the witnesses for the State convinces us that they were not hostile to defendant nor unduly friendly to the prosecution; and when asked questions which suggested erroneous answers, they were circumspect enough not to be misled, but gave answers indicating that they relied upon their memories and that their evidence was not tainted with personal bias.  With the record in this condition, we cannot reverse the judgment on account of errors in permitting leading questions to be propounded.

IV.   Defendant alleges that the trial court erred in its instruction defining murder in the second degree, by using the words "violent passion," without defining same.  He cites:  State v. Reed, 154 Mo. 122; State v. Strong, 153 Mo. 548; State v. McKinzie, 102 Mo. 620; State v. Andrew, 76 Mo. 101; and State v. Skaggs, 159 Mo. 581.

These cases lend some color to defendant's contention, but they do not justify a reversal in this case, for the reason that defendant was not convicted of murder in the second degree, but of a lower grade of crime.  [State v. Haines, 160 Mo. 555, l. c. 567.]  There was evidence upon which a conviction of murder in the

second degree could be sustained; hence there was no error in giving the instruction on that crime.

Defendant's contention that "violent passion suddenly aroused by insulting and abusive language" used by deceased toward defendant would reduce the killing to manslaughter, is unsound. Mere words never justify a felonious assault with a deadly weapon. [State v. Barrett, 240 Mo. 161, and cases there cited.]

V. Further complaint is made of the phraseology of an instruction given on the part of the State as to the credibility of witnesses, in which instruction the jury were told to consider the "character of each witness, his or her manner on the stand, his or her interest if any in the result of the trial, and his or her relation or feeling for defendant *or any other party or witness connected with the case.*"

The words italicized are objected to as embracing too many persons. This instruction is somewhat broader than it should have been. Several relatives of both deceased and defendant were witnesses, and we are not able, after careful consideration of defendant's arguments, to understand why the instruction was not just as favorable to him as to the State. For aught we know by the record some of the witnesses might have been related to the prosecuting attorney or special counsel for the State and that fact known to the jury and court.

We are confident that no substantial right of defendant was invaded by giving the instruction complained of. We cannot reverse judgments except for errors prejudicial to the "substantial rights of the defendant upon the merits." This point is also ruled against defendant. [Sec. 5115, R. S. 1909.]

VI. The defendant objected to certain remarks of the special counsel for the State, and assigns error on the part of the court in failing to rebuke him. The

transgression of special counsel against which complaint is made, was not of a serious nature. No exception was saved to the court's failure to rule on or to rebuke counsel, and therefore the point is not before us for review. [State v. Chenault, 212 Mo. 137; State v. Phillips, 233 Mo. 299, 1. c. 306.]

VII. Error is also assigned in the trial court's action in permitting special counsel to conduct the examination of witnesses for the State. This assignment must also be disregarded. [State v. Stark, 72 Mo. 37; State v. Coleman, 199 Mo. 120.]

The information must be preferred by the prosecuting attorney, but after that is done, we see no reason why a special counsel may not conduct the trial in the same manner as the public prosecutor. He is under the eye of the court and must conform to all the rules of the court and laws which regulate the conduct of the prosecuting attorney.

Other matters of minor significance are urged by the defendant. We have considered them, but do not think they are of enough importance to deserve mention in this opinion.

The accused was defended by resourceful counsel who carefully guarded all his rights.

The record contains no reversible error, and we therefore affirm the judgment. *Ferriss* and *Kennish, JJ.,* concur.