State v. Hamilton.

———O———

STATE OF MISSOURI, Respondent, vs. JOSEPH P. HAMILTON, Appellant.

1. *Practice, Supreme Court—Invective of counsel.*—It is for the trial court to determine whether counsel transcend the limits of professional duty and propriety, and that determination cannot be assigned for error in the appellate court.

2. *Evidence—Testimony as to language uttered in presence of accused—Qui tacet, etc.*—It is not proper in all instances where declarations are made in the presence and hearing of a person, that those declarations should be given in evidence against him. Unless it be shown that the party is immediately concerned, and that his silence might fairly be construed into an admission, the declarations will not be admissible.

3. *Evidence—Impeachment of witness—General reputation as to moral character may be proved.*—In discrediting a witness, the examiner is not restricted to inquiries as to his reputation for truth. The examination may extend to his reputation for moral character generally.

4. *Practice, civil—Witnesses, re-examination of—Matter discretionary with court.*—When a party has examined his witness and the other party has cross-examined him, it is then generally discretionary with the court whether a re-examination will be allowed; and before the Supreme Court will interfere in such a case, manifest abuse and injustice would have to be shown.

*Appeal from Harrison Circuit Court.*

*Alley & Prettyman, and J. H. Shanklin,* for Appellant.

*James P. Thomas,* for Respondent.

WAGNER, Judge, delivered the opinion of the court.

The defendant was indicted in the Mercer County Circuit Court, jointly with one Caroline Hallock for the murder of Elisha W. Hallock. The indictment was against him as principal in the first degree, and against her as accessory before the fact. Upon the application of the defendant a change of venue, was granted to Harrison county, where the trial was had which resulted in the conviction of the defendant of murder in the first degree.

The only errors complained of and which are exclusively relied upon for a reversal of the judgment, are: 1st. "The action of the court in permitting counsel who was employed by the friends of the murdered man, to take a leading part in the prosecution, and especially to close the case before the jury, and indulge as is alleged, in a strain of invective against the accused." "2nd. In admitting the testimony of the witness Collings, as to what was said in the presence of the accused, as to where the pistol was found with which the act was supposed to have been committed. And 3rd. In excluding the question put to the witness Powell as to the moral character of one of the witnesses, who had been examined on the part of the State.

1st. There is no law in this State to prevent the employment of counsel to assist the Circuit Attorney in carrying on a prosecution. It is very often necessary to promote the ends of justice that it should be done. When counsel are engaged and take part in the conduct of a case, the peculiar position or attitude that they shall assume in reference thereto, is primarily a matter to be arranged between themselves, under the supervision and control of the trial court. It was within the discretion of the court to permit the assistant counsel to conclude the argument in the case, if the prosecuting officer waived his right to do so, and we will not attempt to revise

that discretion here. As to the abusive language made use of by the counsel, his words are not preserved in the bill of exceptions. But this court will not undertake to restrain the attorney in his choice of language in arguing a case before the jury. Epithets and invective, in which counsel sometimes indulge, are frequently matters of taste, and cases often occur in which severe animadversion is deserved and merited. But after all, it is for the court in the presence of which the trial is had to determine whether the counsel transcends the limits of professional duty and propriety, and that determination cannot in any appellate tribunal be assigned for error.

2nd. The witness William Collings testified that he was acquainted with the defendant and identified him in court; that on the evening of Hallock's death he was on his farm when he heard of it, and went over to Hallock's farm about a mile distant; then two or three men whom he named, brought a revolver out of the house, and defendant went into the house with them when they got it. The prosecuting attorney then propounded to the witness the question; "What, if anything, was said by any person in the presence and hearing of the defendant about where the revolver was found?" This question was objected to but the objection was overruled. Witness then answered, saying that he heard one of the men say in defendant's presence, that they found the pistol upstairs between some bed clothes. The further question was then asked, against the objection of the defendant, whether the witness heard any one say in the presence and hearing of the defendant, anything about defendants having shown them the revolver? To this the witness answered, that when the men came down stairs together and out of the door, one of them stated in the presence of the prisoner and only a step or two distant from him, that they had got the pistol up stairs between some bed clothes. The witness then stated that the prisoner might have been three steps distant, but that was the outside limit as to distance that he placed upon it.

It is not in all instances, where declarations are made in the

presence and hearing of a person, that those declarations can be given in evidence against him ; they frequently call for no reply and sometimes they are impertinent and deserve no notice. Unless it is shown that the party is immediately concerned, and that unless he did speak, his silence might fairly be construed into an admission, the declarations will not be admissible. No proper foundation had been laid when this evidence was admitted. But afterwards, the fact of the pistol being found, and the place where it was found, was directly proved by other testimony and the declarations were therefore not merely irrelevant but utterly harmless.

3rd. Sewell Hoyne was a witness for the State, and the defendant with a view of impeaching his testimony, introduced one John Powell who testified, that he was pretty well acquainted with Hoyne's general reputation for truth and veracity in the neighborhood in which he resided, and that it was not very good. On cross-examination Powell stated that he had never heard but one man say anying in regard to Hoyne's reputation for truth. The defendant then attempted to re-examine the witness, and asked him if he was acquainted with the moral character of Hoyne. This question was objected to by the State, and the objection was sustained. It is undoubtedly true that the decisions in this State have followed those authorities which declare the doctrine, that in discrediting a witness, a party is not restricted to inquiries into his character for truth, but that the inquiry may extend to his moral character generally. (State vs. Shields, 13 Mo., 239.) But in the present case the defendant had made an attempt to impeach the witness' character for truth and veracity, and had turned his witness over to the prosecution for cross-examination. After the cross-examination was completed, he then sought to again open examination in chief and attack the impeached witness' moral character. Whether he could do so under such circumstances, was a question depending very much on the discretion of the court trying the cause. When a party has examined his witness, and the other party has cross-examined him, it is then generally discretionary with the court whether

. a re-examination will be allowed, and before this court would interfere in such a case, manifest abuse and injustice would have to be shown. Nothing of the kind appears here, but on the contrary, the whole record so overwhelmingly sustains the verdict, that it would be violating every principle of criminal justice for this court to interfere.

The judgment should be affirmed.