**STATE of Missouri, Respondent,**

v.

**James HARRINGTON, Appellant.**

**No. 59139.**

Supreme Court of Missouri,
En Banc.

March 8, 1976.

James R. Robison, Sikeston, for appellant.

Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for respondent.

PER CURIAM.

James Harrington was convicted of murder in the second degree by a jury in the Circuit Court of Scott County, Missouri, in connection with the death, on September 19, 1971, of one Kenneth Ellison in front of a beer tavern in Sikeston, Missouri. Following rendition of judgment and imposition of sentence, an appeal was perfected by James Harrington to the Springfield District of the Court of Appeals, where the cause was reversed and remanded. Upon application of respondent, the cause was transferred here by order of this Court. We determine the cause "the same as on original appeal." Mo.Const. Art. V, § 10.

■ The first question on this appeal is whether defendant Harrington's trial was rendered "fundamentally unfair" (*State v. Aubuchon,* 381 S.W.2d 807, 814 (Mo.1964)) by reason of the State's failure to produce, *prior to trial,* the substance of oral statements made by him on September 20, 1973, in Chicago, Illinois, to agents of the Federal Bureau of Investigation. The following portion of this opinion, dealing with this question, was written by Chief Judge Billings in an opinion prepared for the Springfield District of the Court of Appeals, and is adopted here, with minor changes, without quotation marks.

Following his arrest in Chicago by agents of the Federal Bureau of Investigation, the defendant was advised of his *Miranda* rights and signed a written waiver of these rights. Agents Kempf and Gallagher then interviewed the defendant and reduced to writing the substance of his oral statements. The FBI document included the details of the defendant's arrest, his denial of his identity, his waiver of rights, and his statement concerning the shooting of Kenneth Ellison and flight from Sikeston to Chicago. The statement indicated the shooting was accidental.

In an interview with the defendant on December 12, 1973, counsel appointed to represent him learned of the FBI interview and defendant's statements as to the events surrounding the shooting. The record reflects that defendant's counsel were advised by the prosecuting attorney that a copy of any statement made by the defendant to officers would be furnished without the necessity of a formal motion under Rule 25.-195 [Repealed October 9, 1973, effective July 1, 1974. See now Rule 25.32].

The defendant was arraigned in circuit court on January 10, 1974, and entered a not guilty plea to first degree murder. At that time counsel for the defendant filed a motion under Rule 25.195 seeking copies of "all written statements and transcriptions of all recorded statements and narrative reports of all verbal statements . . . given by the Defendant to, or in the presence of, any law enforcement officer, relating to the charges against Defendant, or the death of Kenneth Ellison."

In ruling the defendant's motion, the court, inter alia, said: "I am going to sustain the motion as nearly as I can understand it . . .." Further, the judge added, directing his remarks to the prosecuting attorney, "Within the next two or three days, [Prosecuting Attorney] is to file the names of all the witnesses, and if you have any written statements made by the defendant, copies of those." At that time the prosecutor advised the court and defense counsel: "There may be a statement by an FBI agent in Chicago of which I was given some indication. I have made some—I have attempted to contact the FBI agent. I do not know if a statement was given; I do not know. What I understand, they did have a conversation and the name and address, of course, as best I have, I have furnished."

On January 18, 1974, defense counsel deposed the Sheriff of Scott County. The Sheriff stated that he had seen a copy of the FBI document in the possession of the resident FBI agent during the period between the defendant's September arrest and his November extradition.

The prosecuting attorney wrote letters to the resident agent of the FBI at Cape Girardeau and to Agent Kempf on January 18, 1974, requesting a copy of the defendant's statement. The letters noted the prosecutor was in need of the statement in order to prepare for trial on January 31, 1974, and because the State had "been instructed by the court to provide the defense with any statements made by the defendant." The letter to Agent Kempf also advised him the State would need his testimony at the trial.

The transcript shows that on January 22, 1974, Agent Kempf was endorsed as a witness on the State's information. At a court proceeding on January 29, 1974, the prosecuting attorney advised the court the FBI had not given him the defendant's statement. It is undisputed that defense counsel had, prior to that date, made repeated requests of the prosecutor for a copy of the statement. The requests continued throughout the afternoon of the day before the trial, but to no avail.

Agent Kempf testified he never received a request for the defendant's statement from the prosecuting attorney of Scott County. He said he delivered the statement to the prosecutor in the latter's Sikeston law office the afternoon before the trial. The prosecutor testified he did not furnish defense counsel with a copy of the statement at that time, although defense counsel's law offices were located within short walking distance of his own office, because it "was and is my position that this was not a statement of the defendant, that this was a police report . . .."

The defendant's trial commenced the next day, January 31, 1974. Shortly before voir dire examination of the jury panel commenced, and pursuant to the judge's direction, a copy of the defendant's statement was furnished to his lawyers. The court overruled the defendant's motion that Agent Kempf be excluded from testifying as to statements of the defendant, as well as the defendant's motion for a continuance of the case, by reason of the State's failure to earlier furnish a copy of his statement.

Agent Kempf's testimony covered the circumstances of the defendant's flight from the federal officers, his apprehension and denial of his identity, and his statement describing the shooting of the deceased.

The State, in this appeal, seeks to justify the earlier non-production of the defendant's statement and seeks to distinguish *State v. Scott,* 479 S.W.2d 438 (Mo. banc 1972), relied upon by the defendant. *Scott* is not applicable, the State argues, because in that case various factors were present which are absent in the case at bar. The length of the officer's testimony, the incriminating nature thereof, the contemporaneous note taking of the officer, and the physical possession of the notes by the officer are urged as reasons for the ruling in *Scott.* The State contends the prosecuting attorney made a diligent effort to obtain the FBI document, the defendant's statements are not lengthy nor incriminating, and, in addition, the document was not within the purview and scope of Rule 25.-195. Besides, the State says, defense counsel could have journeyed to Chicago and deposed Agent Kempf prior to trial or submitted interrogatories to the agent.

We are not impressed with the foregoing arguments. We are of the opinion that what was said in ruling *Scott,* supra, is equally applicable to the information sought in this case.

" 'We start with the premise that truth is best revealed by a decent opportunity to prepare in advance of trial. We have embraced that tenet with respect to civil litigation, and absent overriding considerations, it should be as valid in criminal matters. It is of no moment that pretrial inspection is not constitutionally assured.

*Cicenia v. La Gay,* 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958). We are not limited to constitutional minima; rather we strive for practices which will best promote the quest for truth. It may be added that although *Cicenia v. La Gay* found the Fourteenth Amendment to be unoffended, yet it observed that "it may be the 'better practice' for the prosecution to comply with a request for inspection." 357 U.S. at page 511, 78 S.Ct. at page 1301, 2 L.Ed.2d at page 1529.

" 'It is difficult to understand why a defendant should be denied pretrial inspection of his own statement in the absence of circumstances affirmatively indicating disservice to the public interest.

" 'If a suspect refused to give a statement unless assured a copy, it would be an injudicious prosecutor who would not agree. And if the suspect were then represented by competent counsel, that stipulation would be required. Why, then, should the State refuse a copy to the suspect who was unrepresented and uninformed?

" 'We must be mindful of the role of a confession. It frequently becomes the core of the State's case. It is not uncommon for the judicial proceeding to become more of a review of what transpired at headquarters than a trial of the basic criminal event itself. No one would deny a defendant's right thoroughly to investigate the facts of the crime to prepare for trial of that event. When a confession is given and issues surrounding it tend to displace the criminal event as the focus of the trial, there should be like opportunity to get at the facts of the substituted issue. Simple justice requires that a defendant be permitted to prepare to meet what thus looms as the critical element of the. case against him.

" 'The need for an opportunity to prepare to deal with a defendant's statement must be evident. If voluntariness is in issue, the content of the confession may be revealing. Counsel would need time to explore thoroughly the truth of the factual assertions therein, to inquire whether it contains any-

thing more than the State knew at the time when defendant was apprehended, and to consider whether the content itself supports or negates the defendant's claim of involuntariness. Pretrial inspection may be equally necessary even though defendant concedes he freely gave the statement. This is so because the impact of the statement upon guilt may turn upon how the facts are stated, or upon the absence of exculpatory facts which a defendant may claim were revealed to the interrogator or would have been revealed if the inquiry had been complete. In murder cases in which guilt is not disputed, the manner of expression or the omission of palliative circumstances may have additional significance because of their influence upon the jury's determination as to punishment. Or the confession may contain prejudicial material which should be exscinded and as to which counsel should not be required to make a hurried decision in the courtroom. The possible situations may be multiplied. The virtue of the adversary approach to a trial lies precisely in the opportunity for a full and fair presentation, and hence where the State has had a unilateral examination of a defendant, he should be enabled, as far as feasible, to prepare to explore the completeness and fairness of a policeman's or prosecutor's development of the story in the confession.' " 479 S.W.2d at 442 (quoting from *State v. Johnson,* 28 N.J. 133, 145 A.2d 313, 315–16 (1958)).

The statement of the accused to the FBI agent that the shooting was accidental was contradictory to his trial theory of self-defense, and his account of the circumstances leading up to the shooting was at war with his trial testimony. Without the benefit of the defendant's unilateral examination by the State, defense counsel were committed in their trial strategy to evidence in support of his self-defense plea. " 'Simple justice requires that a defendant [and his attorney] be permitted to prepare to meet what thus looms as the critical element of the case against him.' " *State v. Scott,* supra, 479 S.W.2d at 442.

We hold that under the circumstances of this case the failure of the State to deliver a copy of defendant's statement to his attorneys *prior to trial* was fundamentally unfair and resulted in prejudicial error. The case must be reversed and remanded for new trial.

■ We turn now to the question which caused us to transfer this case from the Springfield District of the Court of Appeals. It involves participation in the trial of the case by a *private* prosecutor, Attorney Robert A. Dempster, who was employed by Max Ellison, father of Kenneth Ellison, to help prosecute the defendant. We must deal with the question because we can anticipate such participation will be sought when the case is again brought to trial.

In *State v. Camlen,* 515 S.W.2d 574, 576 (Mo. banc 1974), this Court said:

" . . . No prejudice has been demonstrated in the appearance of a private prosecutor, permitted by the trial court to assist in the prosecution. Attention is called, however, to the remarks in *State v. Bockman,* 251 S.W.2d 607, 609[6, 7] (Mo.1952), criticizing the custom of permitting employment of special prosecutors. The practice invites error from an excess of zeal which might well be avoided by leaving the conduct of a criminal prosecution entirely in the hands of the elected official upon whom such duty has been placed."

We believe, and hold, that the practice of allowing *private* prosecutors, employed by *private* persons, to participate in the prosecution of criminal defendants, is inherently and fundamentally unfair, and that it should not be permitted on retrial of this case or in any case tried after publication of this opinion in the Southwestern Reporter.

The reasons for such holding were persuasively stated by Chief Judge Billings in the opinion written for the Springfield District of the Court of Appeals, portions of which follow, and are adopted here, with minor changes, without quotation marks.

The Legislature of this State long ago enacted statutes which spell out the qualifications for public prosecutor [§ 56.010, RSMo 1969] and mandatorily direct that the prosecuting attorney "shall commence and prosecute" the criminal actions in his county [§ 56.060, RSMo 1969]. Authority is granted for the appointment of assistant prosecuting attorneys [§ 56.240, RSMo 1969] and further assistance from the state's attorney general is made available [§ 27.030, RSMo 1969]. Provision is found for the court to appoint an attorney to prosecute if the prosecuting attorney is disqualified [§ 56.110, RSMo 1969] or sick [§ 56.120, RSMo 1969] and to fix the fee of such appointees, taxable as costs [§ 56.130, RSMo 1969]. Further, the prosecuting attorney and assistant prosecuting attorney are specifically barred by statute from accepting employment by a defendant in a criminal case "during the term of office" [§ 56.360, RSMo 1969].

Conversely, the private prosecutor need not be a resident of the county, his compensation comes from private sources rather than public funds, he is not subject to disqualification, and he is free to represent the defendant in the next criminal case on the docket.

In considering similar statutory enactments, the Supreme Court of Wisconsin declared in *Biemel v. State,* 71 Wis. 444, 37 N.W. 244, 245–48 (1888):

"We think public policy, and the fair, just, and impartial administration of the criminal law of the state, make it the duty of the courts to exclude the paid attorneys of private persons from appearing as prosecutors.

\*      \*      \*      \*      \*      \*

"We think it is quite clear from the reading of our statutes on the subject, as well as upon public policy, that an attorney employed and paid by private parties should not be permitted either by the courts or by the prosecuting attorney to assist in the trial of such criminal cases. The laws have clearly provided that the district attorney,

who is the officer provided by the laws of the state to initiate and carry on such trials, shall be unprejudiced and unpaid except by the state, and that he shall have no private interest in such prosecution. He is an officer of the state . . . . 'The prosecuting officer represents the public interests, which can never be promoted by the conviction of the innocent. His object, like that of the court, should be simply justice; and he has no right to sacrifice this to the pride of professional success.' . . . [The prosecutor has a duty to present evidence favorable to the defendant]. This method of presenting a case is not that favored or pursued in civil cases, where the paid attorneys of the respective parties conduct them. And criminal cases are not likely to be so presented if the prosecution is permitted to be conducted by the paid attorneys of parties who from passion, prejudice, or even an honest belief in the guilt [sic] of the accused, are desirous of procuring his conviction."

In a later Wisconsin case, *State v. Peterson*, 195 Wis. 351, 218 N.W. 367, 369 (1928), the Court said:

"In an early day in England private parties prosecuted criminal wrongs which they suffered. They obtained an indictment from a grand jury, and it became the duty and the privilege of the person injured to provide a prosecutor at his own expense to prosecute the indicted person. Our scheme of government has changed all this. It is now deemed the better public policy to provide for the public prosecution of public wrongs without any interference on the part of private parties, although they may have been injured in a private capacity different from the general public injury that accrues to society when a crime is committed. So under our system we have private prosecution for private wrongs and public prosecution for public wrongs. Our scheme contemplates that an impartial man selected by the electors of the county shall prosecute all criminal actions in the county unbiased by desires of complaining witnesses or that of the defendant."

This Court has recognized the inherent vice and potential prejudice arising from the participation of privately retained prosecutors in the prosecution of criminal defendants, but, nevertheless, has yet to strike down a conviction because of a private prosecutor's participation. The decisions have cast the burden on the defendant to allege and prove prejudice. We have come to believe that, by reason of the public policy enunciated by the Legislature, such a burden is unwarranted.

We are not unaware that in most jurisdictions private prosecutors continue to participate in public prosecutions and text authorities proclaim such practice to be the general rule. 63 Am.Jur.2d Prosecuting Attorneys § 9 (1972); 27 C.J.S. District & Prosecuting Attorneys § 28 (1959). The reasons advanced are many and diverse but the underlying assumption is that the prosecuting attorney will retain control and management of the case and presupposes the trial court will keep a watchful eye on the private prosecutor throughout the proceedings.

In "Private Prosecution—The Entrenched Anomaly", 50 North Carolina Law Review 1171 (1972), the author discusses the conflicting roles of public and private prosecutors. Mention is made of the drastic change of the role of the public prosecutor since the inception of the doctrine permitting participation by private prosecutors. "From his sole function as procured advocate for a prosecution, the duties of the public prosecutor have taken on new dimensions. He is not an advocate in the ordinary sense of the word, but is the people's representative, and his primary duty is not to convict but to see that justice is done. The prosecutor is an officer of the state who should have no private interest in the prosecution and who is charged with seeing that the criminal laws of the state are honestly and impartially administered, unprejudiced by any motives of private gain. It is his duty to show the whole transaction as it was, regardless of whether it tends to establish a defendant's guilt or innocence.

"Conversely, a privately retained attorney owes his client individual allegiance, and once employed he must not act for an interest even slightly adverse to that of his client in the same general matter. Therefore, in view of the ethical and judicial restrictions imposed on the public prosecutor and the generally recognized loyalties of the private advocate, 'private prosecutor' is a contradiction in terms. The high standard of impartiality demanded of a prosecutor realistically cannot be expected of the private advocate." 50 N.Car.L.Rev. at 1173 (footnotes omitted).

Our Court recognized this contradiction in *State v. Moreaux*, 254 Mo. 398, 409, 162 S.W. 158, 161 (1914), when the view was expressed that "they [special prosecutors] are usually employed by private individuals solely to secure a conviction, and their zeal and energies are bent to accomplish that end. This is not the sole purpose of a criminal prosecution, but a result which may, and if the accused is shown to be guilty should, follow a fair and impartial trial, always best afforded the accused when the prosecution is conducted by the state's accredited representative, who, no matter how vigorously he may prosecute, does not, or at least should not, under his oath, lose sight of the fact that the accused is entitled to a fair trial."

The distinction between the roles of a public prosecutor and a private prosecutor is recognized in Supreme Court Rule 4, Code of Professional Responsibility. Rule 4, EC 7–13 points out that the responsibility of a public prosecutor differs from that of the usual advocate, noting that it is the public prosecutor's duty to seek justice, not merely to convict. Reasons are spelled out why the public prosecutor has this special duty. Rule 4, DR 7–103(B) further amplifies the duty and obligations of the public prosecutor in criminal litigation. On the other hand, Rule 4, EC 5–1, EC 5–14, EC 5–21, and EC 7–1, concerning the duties and obligations of a lawyer to his client, demand complete loyalty to the client and

his cause, free from the interests or desires of others.

The modern day prosecutor wields the power of the State's investigatory force, decides whom to indict and prosecute, decides what evidence to submit to the court, negotiates the State's position in plea bargaining and recommends punishment to the court. The entry of a private prosecutor into a criminal prosecution exposes all of these areas to prejudicial influence. We consider such exposure intolerable.

The judgment is reversed and the cause remanded.

SEILER, C. J., and MORGAN, BARDGETT, FINCH and DONNELLY, JJ., concur.

HOLMAN, J., dissents in separate dissenting opinion filed.

HENLEY, J., dissents and concurs in separate dissenting opinion of HOLMAN, J.

HOLMAN, Judge (dissenting).

I respectfully dissent. My dissent is based on the point which rules that privately employed attorneys may no longer assist prosecuting attorneys in this state.

In the first place this ruling is contrary to the general rule in this nation. In 27 C.J.S. District & Pros. Attys. § 28a, p. 711, it is said that, " . . . special prosecutors, privately employed, are permissible if agreeable to the prosecuting attorney; and provided the district or prosecuting attorney retains control and management of a criminal prosecution, . . . " and at § 29(1)(c), p. 725, it is stated that, "By the great weight of authority the court may, in its discretion, permit the prosecuting attorney to have the assistance of counsel employed by the prosecuting witness or other persons interested in securing a conviction; but such appointment, it has been held, can be made only on the request or consent of the prosecuting attorney, which, however, may be presumed from the fact of participation and assistance without objection."

Likewise, in this state the practice has long been approved. In the early case of *State v. Hamilton*, 55 Mo. 520, 521 (1874) this court stated that, "There is no law in this State to prevent the employment of counsel to assist the Circuit Attorney in carrying on a prosecution. It is very often necessary to promote the ends of justice that it should be done. When counsel are engaged and take part in the conduct of a case, the peculiar position or attitude that they shall assume in reference thereto, is primarily a matter to be arranged between themselves, under the supervision and control of the trial court. It was within the discretion of the court to permit the assistant counsel to conclude the argument in the case, if the prosecuting officer waived his right to do so, and we will not attempt to revise that discretion here. . . ." Also, in *State v. Finley*, 245 Mo. 465, 150 S.W. 1051, 1054 (1912) the court stated that, "Error is also assigned in the trial court's action in permitting special counsel to conduct the examination of witnesses for the state. This assignment must also be disregarded. *State v. Stark*, 72 Mo. 37; *State v. Coleman*, 199 Mo. 120, 97 S.W. 574. The information must be preferred by the prosecuting attorney; but after that is done we see no reason why a special counsel may not conduct the trial in the same manner as the public prosecutor. He is under the eye of the court, and must conform to all the rules of the court and laws which regulate the conduct of the prosecuting attorney." And in the more recent case of *State v. Matthews*, 111 S.W.2d 62, 65 (Mo.1937) Judge Westhues stated that, "If parties interested in a prosecution feel that the prosecuting attorney, elected by the people, is unable to cope with the legal talent employed by the defendant, they ought in justice be permitted to employ additional counsel at their own expense. Lawyers, after all, are sworn officers of the court and while conducting a trial are under the direct control of the trial court. How, then, can the employment of counsel in a criminal prosecution be legally prejudicial to a defendant? We see no good

reason for departing from our previous rulings."

Other cases of like import are: *State v. Stark*, 72 Mo. 37[1] (1880), *State v. Robb*, 90 Mo. 30, 2 S.W. 1[3] (1886), *State v. Orrick*, 106 Mo. 111, 17 S.W. 176[8] (1891), *State v. Taylor*, 98 Mo. 240, 11 S.W. 570[1] (1889), *State v. Coleman*, 199 Mo. 112, 97 S.W. 574[9] (1906), *State v. Barnes*, 325 Mo. 545, 29 S.W.2d 156[9] (1930), *State v. Boyer*, 232 Mo. 267, 134 S.W. 542[6] (1911) and *State v. McCracken*, 341 Mo. 697, 108 S.W.2d 372[2] (1937). While the principal opinion does not mention that any cases are being overruled thereby it seems clear that the decision overrules all of the cases (and no doubt others) that have been heretofore cited.

Great reliance seems to be placed on S.C. Rule 4–E.C. 7–13 which specifies the duties of a prosecuting attorney and his responsibilities to the defendant as well as to the public. I do not think that rule should affect this decision. When a lawyer is employed to assist the state he is probably bound by that rule. If not, it is clear that the prosecuting attorney is in absolute charge of the case and he will see to it that the rule will not be violated in connection with the prosecution of the case. The private attorney does not become the prosecuting attorney but is merely employed to assist him.

Of course, no one wants to see an innocent man convicted of a crime. By the same token good citizens do not desire to see a guilty man acquitted. Conviction of the guilty is necessary if we are to have any substantial enforcement of laws. Many courthouses have the motto inscribed thereon that, "Obedience of law is liberty." The defendant is entitled to a fair and just trial. The state and the public are also entitled to fair and just treatment. The defendant has always been awarded many advantages in the trial of a criminal case and recent decisions have added to them. Some of these advantages are: (1) the state must prove its case beyond a reasonable doubt, (2) the

defendant is presumed to be innocent, (3) the defendant is entitled to twice as many peremptory jury challenges as the state in felony cases, (4) the defendant may refuse to testify and the state cannot comment thereon, (5) if he does testify his cross-examination is restricted, (6) there are restrictions upon the use of confessions and line-ups, (7) the verdict must be unanimous as distinguished from three-fourths in civil cases, and (8) prior to trial the prosecutor must disclose all of his information to the defendant which might aid him. And the decision today will add one more restriction upon the prosecution.

Many prosecuting attorneys are very able. In many areas, however, young attorneys are elected to that office just to enable them to obtain experience. It is not unusual to elect a man prosecuting attorney who has never actually tried a case. And yet he will often have to match his ability with highly skilled criminal lawyers. Under the principal opinion when that situation develops a private attorney could not be employed to assist the prosecution.

The practice of employing private counsel is rarely used in this state. I see no necessity for this court, however, to decree that the practice is absolutely outlawed. There are no doubt a few cases from time to time where assistance is necessary and desirable. This practice which has been approved in this state for more than a century should not be disturbed.