STATE of Missouri, ex rel., Ann L. O'BRIEN, Petitioner,

v.

Edward M. MORELAND, Director of St. Louis County Department of Justice Services, Respondent.

No. 56393.

Missouri Court of Appeals, Eastern District, Writ Division Six.

Oct. 3, 1989.

Timothy J. Finnegan and David C. Drury, St. Louis, for petitioner.

Frank Susman, Patricia Redington and Andrew Feist Wasserman, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

In this original habeas corpus action, Ann L. O'Brien challenges an order finding her guilty of indirect criminal contempt. She was ordered to serve four days in the St. Louis County jail. On March 21, 1989, she began serving her term, and filed her petition for habeas corpus. That day, we issued our writ and released her on bond. We now order O'Brien discharged from custody and her bond discharged.

Following oral argument, we directed the parties to brief two issues. First, whether sufficient facts and circumstances were set forth in the (1) notice given O'Brien, (2) judgment of contempt, and (3) commitment order. Second, whether counsel for an interested party in the underlying litigation may be appointed to prosecute criminal contempt.

I

The facts in the underlying case disclose that on March 22, 1985, the St. Louis County Circuit Court issued a permanent injunction in *Reproductive Health Services v. Lee.* The injunction enjoined two named parties, Lee and Andrews, and "any person in active concert or participation with" them "from engaging in any activities which constitute coming upon or a trespass upon" RHS's premises.

O'Brien was arrested on RHS's premises on February 4, 1989. That day, RHS, through its attorney Frank Susman, filed a motion for contempt, alleging violation of the 1985 injunction. The motion alleged that, despite having actual notice of the injunction, O'Brien, with others, "entered and trespassed upon [RHS's] premises." It further alleged that they "refused to vacate [RHS's] premises" when requested, and that O'Brien's acts constituted "civil and/or criminal contempt."

The same day that motion was filed, the circuit court issued an Order to Show Cause, "if any, why she should not be found guilty of civil and/or criminal contempt for violation of this Court's Judgment, Order and Permanent Injunction, entered May 22, 1985, a copy of said Order being attached hereto and incorporated herein." On February 7, however, the matter was continued.

On March 7, the court appointed Frank Susman special prosecutor for this matter pursuant to Rule 36.01(b). The trial court held the hearing on the order to show cause on March 7 and 8. Following the hearing, the court entered a judgment of contempt finding O'Brien acted with An-

drews to "disrupt the normal business activities of [RHS], by trespassing upon [RHS's] premises, and by barricading, blocking or interfering with ingress to, egress from or movement within [RHS's] premises, all on or about February 4, 1989." The court found the behavior was willfull and intentional, and found O'Brien "guilty beyond a reasonable doubt by reason of said acts of indirect criminal contempt." The court ordered her committed to jail for four days and assessed a $1,000.00 fine against her, as well as court costs and $1,570.00 attorney's fees to Susman.

The trial court also issued a commitment order. In that order, the court stated O'Brien had acted "in an insolent and defiant manner," thereby violating the court's 1985 injunction "by trespassing upon [RHS's] premises, and by barricading, blocking or interfering with ingress to, egress from or movement within [RHS's] premises, all on or about February 4, 1989." The trial court ordered O'Brien committed to the county jail for four days.

We look first to the issue of whether sufficient facts and circumstances were set forth in the notice, judgment and order of commitment.

## II

### THE ORDER TO SHOW CAUSE

Criminal contempt proceedings are governed by Supreme Court Rule 36.01. Indirect criminal contempt is prosecuted on notice. Rule 36.01(b) requires that the notice include (1) the time and place of the hearing, (2) the essential facts constituting the criminal contempt charged, (3) a description of the charge as criminal contempt. If not given by the Judge orally in open court, the notice shall be by (1) an order to show cause or (2) an order of arrest. As noted in the cases cited below strict compliance with these requirements is mandated.

The contempt proceedings in the instant case were initiated by the filing of a Motion For Contempt by Mr. Susman as attorney for RHS. Several aspects relating to the form of this motion are noteworthy. It consists of three typewritten pages captioned with the style of the underlying action. In the caption five names are printed with pen and ink in the vicinity of the typewritten name of the original defendant, including the name of petitioner herein. Within the body of the motion no individual names are set forth, the allegations all referring generically to "defendants". The typewritten allegation includes the "acts of Defendants constituted civil contempt of this Court's prior Order." Inserted by pen and ink in this allegation between the word "civil" and the word "contempt" is written "and/or criminal". The motion concludes with a prayer that the court "find Defendants to be in civil contempt" and requests the assessment of a fine and an award of attorney's fees. The motion, which purports to recount an event which occurred on February 4, 1989, reflects it was "SUBSCRIBED AND SWORN TO" by the executive director of RHS two days prior to that date, on February 2, 1989, a fact which O'Brien contends explains the lack of specificity regarding the acts which are alleged to constitute her contemptuous conduct. The record before us fails to disclose whether the addition of names and inserted words was effected before or after the date the document was subscribed and sworn to by the affiant, or by whom the additions were made. Although the stamp of the circuit clerk shows this motion to have been filed on February 7, 1989, we are informed it was presented to the court on February 4, 1989, the date upon which the court issued an order to show cause.

■ The notice requirement of Rule 36.-01(b) may be fulfilled by the issuance of an order to show cause or an order of arrest which "shall state the essential facts constituting the criminal contempt charged and describe it as such."[1] Such an order

---

1. Rule 36.01(b) provides for this notice of a charge of criminal contempt to be given by the court "upon application." The application may be from the prosecuting attorney or "an attor-

ney appointed by the court for that purpose." Thus it would seem that the orderly manner for an attorney other than a prosecuting attorney to proceed would be to first file an application in

becomes, in effect, the charging document somewhat akin to an indictment or an information in a criminal case. Although the notice constituting the charge of criminal contempt, a sui generis proceeding, need not meet the specificity and technical requirements of an indictment or information, it must sufficiently advise the alleged contemnor of the actions which it is claimed constitute the contempt. *Ex parte Neal,* 507 S.W.2d 674, 679 (Mo.App.1974); *Mechanic v. Gruensfelder,* 461 S.W.2d 298, 309 (Mo.App.1970). The notice must be such as to "fairly and fully [inform] the accused of the specific acts of contempt with which he is charged." *G- v. Souder,* 305 S.W.2d 883, 886 (Mo.App.1957).

■ The order to show cause issued by the court in this case fails to comply with this requirement. It calls upon O'Brien to appear at a specified time and place "to then and there show cause, if any, why she should not be found guilty of civil contempt for violation of this Courts Judgment, Order and Permanent Injunction, entered May 22, 1985, a copy of said Order being attached hereto and incorporated herein." No allegations regarding actions claimed to be contemptuous are set forth in this order. The order indicates a copy of the original 1985 judgment was attached and the affidavit of service by a special process server states a copy of that judgment was served upon O'Brien together with the order to show cause. The record does not reflect the motion for contempt was served upon O'Brien.

The order to show cause in this case is virtually identical to the order held insufficient to vest the trial court with jurisdiction over a charge of contempt because of its failure to state what conduct was alleged to be contemptuous in the case of *Kohlleppel v. Owens,* 646 S.W.2d 860 (Mo.App. 1982). *Kohlleppel* involved a charge of civil contempt but, because of the potential loss of liberty, the court noted the proce-

dural due process requirement of notice of the specific acts charged was equally applicable. *Id.* at 863. In *Kohlleppel,* as in the instant case, attached to the order to show cause was a copy of the underlying judgment, but the order was silent as to when, where and what actions of a contumacious nature were committed by the alleged contemnor. Expressly argued in *Kohlleppel,* and impliedly inserted in the instant case, is the contention that the notice requirement was satisfied because the contemnor had received a copy of the petition for an order to show cause which contained detailed recitations of the alleged violations. The court held this fact to be irrelevant and, in an opinion written by the Honorable Donald B. Clark, stated:

> The contention made by respondents ascribes a laxity to contempt procedure inappropriate to the seriousness of the subject. Even were the allegations of the Owens' motion to contain the specificity requisite to a charging document in contempt, which they do not, there was no adoption by the court of the motion allegations to support the citation. In fact, the citation makes no mention of the motion whatever. The inference respondents draw is simply that. A charge which may result in a judgment of imprisonment is not sufficient if its content depends on inference, surmise or conjecture. The mere fact the accused may have known the nature of the proceeding from sources other than the notice is not an acceptable substitute for the mandatory notice. *Ex Parte Neal,* 507 S.W.2d 674 (Mo.App.1974).

The court concluded the deficiency of the order to show cause was a jurisdictional defect and that the judgment of contempt was void.

The order to show cause in the instant case contains the identical deficiency. As a charging document it fails to advise

---

the case, seeking appointment for the purpose of obtaining a show cause order. For an example of such an application see 4A BENDER'S FEDERAL PRACTICE FORMS No. 4652 (1988).

Although petitioner complains of non-compliance with this procedure because Mr. Susman

was not appointed as special prosecutor until March 7, 1989, the date of the hearing, we perceive no prejudice to petitioner resulting from the belated nature of the appointment.

O'Brien of any specific act which occurred on any definite date or certain place. Paraphrasing the language of Judge Clark, the charge that the accused must answer for violation of the court's judgment and injunction entered on May 22, 1985, requires preparation of a defense as to any act committed during a period of almost four years at either of two locations mentioned in the injunctions. Accordingly, even assuming that O'Brien received a copy of RHS's motion for contempt, an assumption not supported by the record, and even if we overlook the irregularities in the form of the motion, the failure of the trial court to adopt or even refer to the allegations in the charging document leaves the order to show cause jurisdictionally deficient.

### III

### THE JUDGMENT AND ORDER OF COMMITMENT

O'Brien also challenges the judgment of contempt and the commitment order for failure to set forth sufficient findings of facts and circumstances. In contempt proceedings, "the facts and circumstances constituting the offense, not mere legal conclusions, must be recited in both the judgment of contempt and the order of commitment." *Ex Parte Brown*, 530 S.W.2d 228, 230 (Mo. banc 1975). There are numerous other cases which state this requirement. The parties, however, did not refer us to any case involving findings similar to those here, nor has our research disclosed any.

■ Here, in the judgment of contempt, the court found that O'Brien, Carol Armstrong, and Joan E. Andrews violated the 1985 injunction "by acting in active concert or participation with said Joan E. Andrews wilfully (sic) to disrupt the normal business activities of [RHS], by trespassing upon [RHS's] premises, and by barricading, blocking or interfering with ingress to, egress from or movement within [RHS's] premises, all on or about February 4, 1989." The judgment does not state the specific acts which O'Brien did in violation of the injunction, nor are her acts distinguished from those committed by Armstrong or Andrews. Does "acting in active concert and participation" with another refer to planning, instigating, encouraging or actually performing the barricading, blockading, or interfering? The language employed by the trial court fails to disclose to a court of review what factual evidence regarding O'Brien's conduct was believed by the trial court and was found sufficient to warrant the imposition of a jail sentence and a fine as punishment. As stated in *Mechanic v. Gruensfelder*, 461 S.W.2d at 313 "we must find ' * * * that evidence supports the finding beyond a reasonable doubt that petitioner acted as stated in the *specifications* found as to him or her'" (quoting from *Curtis v. Tozer*, 374 S.W.2d 557, 581 (Mo.App.1964)).

The order of commitment before us is also insufficient as it merely repeats the language previously quoted from the judgment of contempt.

The insufficiency of the judgment and order of commitment to set forth the detailed facts and circumstances constituting the offense is clearly demonstrated by comparison to similar judgments and orders which have been upheld by this court. In *Ryan v. Moreland*, 653 S.W.2d 244 (Mo. App.1983), the specific act of the contemnor was set forth in the judgment and order of commitment as follows:

A typical example of a finding of a specific act in violation of the injunction is that relating to petitioner Ryan: "On September 18, 1982, Defendant Ryan did stand in front of the entry door to the Ladies Center of St. Louis, Inc. ("Ladies Center") at 8448 Delmar Boulevard, University City, Missouri, and did thereby block such door and prevent entry of a person who expressed her wish to enter the Ladies Center. Ryan so acted with the intent to disrupt and interfere with the operation of the business of the Ladies Center." *Id.* at 253, n. 4.

Other examples of detailed and precise descriptions of contumacious actions which have met with approval may be found in *State ex rel., Stanhope v. Pratt*, 533 S.W.2d 567, 579–70 (Mo. banc 1976) and *Mechanic v. Gruensfelder*, 461 S.W.2d 298

(Mo.App.1970). An example of approved specificity in a finding of acting in concert by instigating, encouraging, and planning may be found in *State ex rel., Girard v. Percich,* 557 S.W.2d 25, 33, n. 8 (Mo.App. 1977).

Where the judgment or the order of commitment failed to recite the precise facts constituting the court's finding of contumacious conduct, a contempt cannot be upheld. *State ex rel., Burrell-El v. Autrey,* 752 S.W.2d 895, 899 (Mo.App.1988). As can be seen from the cases cited above as well as numerous other decisions, the detail required is of "essential facts" "specific facts," or "precise facts," not conclusions. Anything less results in the alleged contemnor being discharged, regardless of whether the facts disclosed by the record justify the commitment.

## IV

## APPOINTMENT OF SPECIAL PROSECUTOR

Although what we have held above is dispositive of this case, we nevertheless find it appropriate to address the second issue which we specifically requested the parties to brief: whether counsel for a party interested in the underlying litigation could be appointed as special prosecutor in a criminal contempt proceeding. We do so because the issue will inevitably rise again.

The propriety of appointing the attorney for a party to the underlying litigation to serve as special prosecutor in indirect criminal contempt proceedings based upon alleged contumacious violation of a court order was addressed by the Supreme Court in *Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). In five separate opinions the justices agreed upon one issue—prosecution of indirect criminal contempt charges should first be tendered by the court to the appropriate United States attorney. The various opinions differed in the reasons underlying this conclusion and in the effect of non-compliance with this directive. Five justices agreed the appointment of the attorney representing an interested party mandated outright reversal of the con-

tempt conviction without regard to the facts and circumstances of the particular case. Three justices viewed such an appointment as an abuse of discretion and would have remanded the case to the lower court for a determination of whether the error was harmless under the circumstances. One justice, although agreeing that as a general rule contempt cases should be referred to the U.S. Attorney, found no error under the facts of the particular case. In a later decision the Supreme Court summarized the teaching of *Young* as follows: "In *Young* we instructed courts to request the U.S. Attorney to prosecute the criminal contempt charge, and, if the U.S. Attorney declined, to appoint as a special prosecutor a private attorney other than the attorney for an interested party." *U.S. v. Providence Journal Co.,* 485 U.S. 693, 108 S.Ct. 1502, 1505, 99 L.Ed.2d 785, n. 3 (1988).

In *Young,* seven justices concurred in that part of the principal opinion which found an insurmountable conflict between a lawyer's continuing fidelity to his private client and his acting as prosecutor in pursuit of the public interest in vindication of the courts authority.

If a Justice Department attorney pursued a contempt prosecution for violation of an injunction benefitting any client of that attorney involved in the underlying civil litigation, that attorney would be open to a charge of committing a felony under § 208(a). Furthermore, such conduct would violate the ABA ethical provisions, since the attorney could not discharge the obligation of undivided loyalty to both clients where both have a direct interest. The Government's interest is in dispassionate assessment of the propriety of criminal charges for affronts to the Judiciary. The private party's interest is in obtaining the benefits of the court's order. While these concerns sometimes may be congruent, sometimes they may not. A prosecutor may be tempted to bring a tenuously supported prosecution if such a course promises financial or legal rewards for the private client. Conversely, a prosecutor may be tempted to abandon a meri-

torious prosecution if a settlement providing benefits to the private client is conditioned on a recommendation against criminal charges. 481 U.S. at 805, 107 S.Ct. at 2136, 95 L.Ed.2d at 757.

Additionally, the vesting of the discretionary power to make the many decisions critical to the conduct of the prosecution in one who is committed to serving private interests rather than the public and governmental interest of seeking justice creates "at *least* the appearance of impropriety." 481 U.S. at 806, 107 S.Ct. at 2137, 95 L.Ed.2d at 758. The principal opinion found this affront to the integrity of the judicial system to be so "fundamental and pervasive" that no issue of prejudice vis-a-vis harmless error need be addressed, and concluded

> Between the private life of the citizen and the public glare of criminal accusation stands the prosecutor. That state official has the power to employ the full machinery of the state in scrutinizing any given individual. Even if a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life. For this reason, we must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice. A prosecutor of a contempt action who represents the private beneficiary of the court order allegedly violated cannot provide such assurance, for such an attorney is required by the very standards of the profession to serve two masters. 481 U.S. at 805, 107 S.Ct. at 2138, 95 L.Ed.2d at 757.

Similar concerns caused the Supreme Court of Missouri in *State v. Harrington*, 534 S.W.2d 44 (Mo. banc 1976) to hold "the practice of allowing *private* prosecutors employed by *private* persons, to participate in the prosecution of criminal defendants is inherently and fundamentally unfair ..." *Id.* at 48. The court recognized "the inherent vice and potential prejudice arising from the participation of privately retained prosecutors" and, as a matter of public policy, eliminated any need to look for actual prejudice to the rights of a defendant arising from such an appointment. *Id.* at 49.

Although the reasoning underlying the *Young* and *Harrington* decisions is appealing, differences between the Federal Judicial system and the courts of Missouri create practical and political problems which may not be ignored. The *Young* court said that ordinarily a district court should first "request the appropriate prosecuting authority to prosecute contempt actions." *Young*, 481 U.S. at 801, 107 S.Ct. at 2134, 95 L.Ed.2d at 755. That procedure is appropriate in the federal system where the judges and prosecuting authorities are fulltime personnel on the federal payroll. This procedure is less appropriate in Missouri, where many of our prosecuting attorneys work part-time in that position. Further, in Missouri, prosecuting attorneys and trial judges are not all State employees. Prosecutors are county employees, and receive their salary and operational funds from counties. On the other hand, State trial judges are State employees, paid by the State. The fact that funding for certain aspects of the judiciary and law enforcement offices comes from the State while the counties pay for other aspects, often causes conflicts between the circuit court and the county commission or other funding authority. Placing the responsibility on the county prosecuting attorneys and circuit attorneys to prosecute criminal contempt proceedings could increase these financial conflicts. In addition, the county prosecuting attorneys and circuit attorneys already have a heavy load. The potential for criminal contempt charges to arise in the State court system is far greater that in the Federal system. This is due not only to the higher case load in the State system, but also is a result of the type of cases handled by State trial courts. One example is the State's large volume of domestic relations cases, 62,679 of which were filed in fiscal year 1987–88 alone. Interference with visitation rights with children is a substantial, recurring problem in domestic relations cases. If the offending party has assets, a civil contempt action *may* be sufficient to encourage obedience of the court's decree. When the offending party

is indigent, civil contempt proceedings are virtually meaningless. Indirect criminal contempt proceedings, including the authority to incarcerate, gives the trial court the power to enforce its order.

*Young* does allow private attorneys to prosecute a criminal contempt proceeding. Relying on its supervisory power, however, the *Young* court held that the attorney must be a "disinterested prosecutor." *Young*, 481 U.S. at 807, 107 S.Ct. at 2137, 95 L.Ed.2d at 758. Such an appointment, the court says, avoids the *"opportunities* for conflicts to arise," and "the *appearance* of impropriety." *Young*, 481 U.S. at 806, 107 S.Ct. at 2137, 95 L.Ed.2d at 758 (emphasis original). The expressed rationale is to avoid "the *potential* for private interests to influence the discharge of public duty." *Young*, 481 U.S. at 805, 107 S.Ct. at 2136, 95 L.Ed.2d at 757 (emphasis original).

These opportunities, appearances, and potentials arise from the fact that traditionally one of the parties paid the appointed attorney and his primary allegiance was owed to that client. The question arises as to where do the funds come from to pay the appointed attorney to prosecute when that attorney must be "disinterested." The *Young* court disposed of this question in a footnote. The court noted that funds appropriated to the federal courts permit payment of fees to attorneys appointed as special prosecutors. *Young*, 481 U.S. at 806, 107 S.Ct. at 2137, 95 L.Ed.2d at 758 n. 17.

No such funds are appropriated to State courts. If one of the parties is indigent the assessment of attorney fees against that individual would be meaningless.

Although two of the justices in *Young* perceived constitutional violations in the practice of the appointing the attorney for an interested party as prosecutor in criminal contempt proceedings, the decision of the court and the directive to discontinue this practice is clearly predicated upon the supervisory authority of the Supreme Court over the United States District Courts. This court is possessed of no sim-

ilar authority. Article V, § 4.1 of the Missouri Constitution vests supervisory authority of all courts in Missouri in the Supreme Court. Each District of the Missouri Court of Appeals has "general superintending control over all courts and tribunals in its jurisdiction." Superintending control, as opposed to supervisory authority, has been defined as being limited to the compelling of purely ministerial duties and the exercising of jurisdiction over common law writs, and not as extending to matters involving discretion or the exercise of judicial power. *State ex rel., St. Louis Boiler & Equipment Co. v. Gabbert,* 241 S.W.2d 79, 82 (Mo.App.1951); *State ex rel. Auto Finance Co. v. Landwehr,* 229 Mo.App. 1221, 71 S.W.2d 144, 145. Obviously the appointment of counsel to prosecute a charge of criminal contempt involves the exercise of discretion and judicial power. Accordingly, if a decision upon this issue based upon supervisory authority was required in order to reach a final resolution of this case, we would find it necessary to transfer the case to the Supreme Court of Missouri.

## CONCLUSION

For the reasons set forth in parts two and three of this opinion, the petitioner is ordered discharged; her bond is also discharged.

PUDLOWSKI, J., concurs.

GRIMM, P.J., concurs with separate concurring opinion.

GRIMM, Presiding Judge.

I concur in the holding that the notice, judgment of contempt, and commitment order were insufficient.

Judge Gaertner, in his discussion on the appointment of a special prosecutor, notes that "differences between the Federal Judicial system and the courts of Missouri create practical and political problems" in applying the requirements of *Young*. These problems, he notes, "may not be ignored." I agree. Further, circumstances in a federal case like *Young* are different than those which quite often arise in state court cases.

In *Young,* the attorneys were granted broad discretion to investigate and prosecute persons who might be violating the injunction. In contrast, in most state cases, an attorney would be appointed for a limited purpose of prosecuting a specific, existing violation.

A typical situation facing state courts is the domestic relations case, where one parent interferes with the other parent's visitation rights with a child. The attorney for the aggrieved party is usually appointed to prosecute the specific violation of the court's order. That attorney is appointed because of the attorney's familiarity with the parties and the facts of the case.

If appointment of independent counsel was required in such cases, that counsel would have to be paid. Because such counsel would not be familiar with the earlier proceedings in the case, additional time would be required, resulting in higher attorney's fees.

The *Young* court did not have to consider this practical problem because, in the federal system, funds are appropriated for payment of special prosecutor's fees. No such funds are appropriated to state courts. Thus, in state courts, independent counsel would have to look to one of the parties for payment.

If one of the parties pays independent counsel, this produces the same opportunities, appearances, and potentials *Young* sought to avoid. *State ex rel. O'Brien v. Moreland,* 778 S.W.2d at 407 (Mo.App.E.D. 1989). Thus, in the state courts, appointment of independent counsel would result only in increased costs. Also, if one of the parties is indigent, the assessment of attorney's fees against that individual would be meaningless. As a result, it is not difficult to imagine the problems one would incur in finding a disinterested attorney to prosecute criminal contempt actions. On the other hand, counsel who represented a party in the original proceeding might gratuitously represent the aggrieved party in the subsequent contempt proceeding.

One final comment. *Young* involved an underlying injunction which included a clause for monetary damages; no such clause is present in most domestic relations cases. A party, in those cases, receives no benefit from the appointment of that party's attorney as counsel in the contempt proceeding other than enforcement of the court's order.